IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALL METALS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-09-CV-0846-BD |
| | § | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | § § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff All Metals, Inc. ("All Metals") and Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") have filed cross-motions for partial summary judgment in this insurance coverage dispute involving the interpretation of various provisions of a commercial all risk policy. At issue is whether damage to a rotary furnace at the All Metals recycling facility caused by a power outage following a thunderstorm was the result of just one "occurrence," for which Liberty Mutual has paid the policy limits of $500,000, or whether the damage was the result of multiple "occurrences." For the reasons stated herein, the court decides this threshold coverage issue in favor of Liberty Mutual.

I.

The parties have stipulated to all facts necessary for the court to interpret the relevant provisions of the insurance policy. On May 2, 2007, a thunderstorm caused a power outage at the All Metals recycling facility in Terrell, Texas. (*See* Def. MSJ App. at 1, ¶ 2). At the time of the power outage, a rotary furnace at the facility used to covert solder dross and other metal oxides into metal and slag was operating with a full charge of molten metal. (*Id.* at 1-2, ¶¶ 4 & 9). The molten

metal cooled and solidified when the furnace stopped operating, thereby damaging the brick lining of the furnace. (*Id.* at 2, ¶¶ 9-11). When power was restored to the facility two days later, All Metals restarted the furnace and began reheating the metal and slag. (*Id.* at 2, ¶¶ 12 & 15). The reheating process continued until May 8, 2007 -- six days after the initial power outage. (*Id.* at 2, ¶ 15). However, the damaged brick lining could not sufficiently contain the heat generated by the reheating process, causing further damage to other parts of the furnace, including the shell, electrical wiring, and grease line. (*Id.* at 2-3, ¶¶ 17-19). On May 19, 2007, All Metals installed new refractory bricks in the furnace to replace the brick lining damaged as a result of the power outage. (*Id.* at 3, ¶ 20). Within days after the furnace was heated to cure the new bricks, All Metals noticed cracks in the furnace shell and damage to the "tires" that supported the shell. (*Id.* at 3, ¶¶ 21-22). Subsequent investigation revealed that damage to the furnace shell from the May 4-8, 2007 reheating process prevented the shell from expanding with heat and rendered the furnace unsuitable for continued safe use. (*Id.* at 3, ¶¶ 23-25).

At all times relevant to this suit, All Metals was insured under an "all risk" policy issued by Liberty Mutual. (*Id.* at 4, ¶¶ 27-28). The policy provides coverage for "direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded." (*Id.* at 4, ¶ 28; Plf. MSJ Resp., Exh. B at 9) (emphasis in original). Under the policy:

> **Occurrence** means all loss or damage attributable directly or indirectly to one (1) cause or series of similar causes. All such loss or damage will be added together, and the total loss or damage will be treated as one (1) **occurrence** irrespective of the amount of time or area over which such loss or damage occurs.

(Def. MSJ App. at 5, ¶ 31; Plf. MSJ Resp. Br., Exh. B at 43) (emphasis in original). Losses due to an interruption in utility service are excluded from coverage under a general Service Interruption Exclusion that provides, in pertinent part:

> We will not pay for losses caused by or resulting from any of the following, regardless of any other cause or event, including a **peril insured against**, that contributes to the loss at the same time or in any other sequence.
>
> * * * *
>
> Interference with or interruption of any public or private utility or any entity providing power, heat, air conditioning, communication, water or sewer or any other service if the failure occurs away from the **covered location**.
>
> If a **covered loss** ensues, **we** will pay for that loss.

(Def. MSJ App. at 4, ¶ 29; Plf. MSJ Resp. Br., Exh. B at 24) (emphasis in original). However, a Services Interruption Coverage Extension endorsement to the policy provides limited coverage for losses arising out of an electrical power failure:

> **We** will pay for direct physical loss to **covered property**, loss of **business income** and **extra expense** resulting from an interruption of:
>
> (a) Electrical Power
>
> * * * *
>
> *Limit of Liability*
>
> **We** will not pay for more than $500,000 for any one (1) **occurrence**. This **limit of liability** does not increase any other applicable **limit of liability**.

(Def. MSJ App. at 4-5, ¶ 30; Plf. MSJ Resp. Br., Exh. B at 54, 55) (emphasis in original).

The parties agree that the furnace at the All Metals facility is "covered property" and was damaged as a result of the May 2, 2007 power outage. (*See* Def. MSJ Br. at 7; Plf. MSJ Resp. Br. at 4). Believing that damage to the furnace was the result of only one "occurrence," Liberty Mutual paid All Metals $500,000 -- the limit of liability under the Services Interruption Coverage Extension endorsement. (Def. MSJ App. at 5, ¶ 32). All Metals argues that two other "occurrences" resulted

in additional losses totaling $3 million. (*See* Def. Not. of Rem., Exh. A). In addition to the May 2, 2007 power outage, All Metals contends that: (1) reheating the furnace on May 4-8, 2007 damaged the furnace shell, electrical wiring, grease trap, and insulating brick; and (2) the curing of new brick on May 22-24, 2007 damaged the brick and other furnace components. (*See id.*; *see also* Plf. MSJ Resp. Br. at 3-4). Unable to resolve this dispute, All Metals sued Liberty Mutual for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code.[1] The case is before the court on cross-motions for partial summary judgment with respect to the issue of coverage. The motions have been briefed by the parties and are ripe for determination.

II.

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A dispute is "genuine" if the issue could be resolved in favor of either party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Cases involving the interpretation of insurance policies are particularly appropriate for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).

The disposition of the pending motions requires the court to interpret various provisions of an insurance policy. Under Texas law, which provides the rule of decision in this diversity case, the

---

[1] All Metals originally filed this action in Texas state court. Liberty Mutual removed the case to federal court on the basis of diversity of citizenship because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

insured has the burden to prove that coverage exists. *See Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 553 (5th Cir. 2004) (applying Texas law). The insurer has the burden to prove that an exclusion applies. *Id.*; *see also* TEX. INS. CODE ANN. § 554.002 (Vernon 2009). Once the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion. *Primrose Operating*, 382 F.3d at 553. The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

A.

The issue in this case is whether damage to the furnace at the All Metals recycling facility was the result of one "occurrence" or multiple "occurrences." Neither party contends that the policy definition of "occurrence" is ambiguous or that the determination of the number of "occurrences" hinges on the resolution of disputed facts. Thus, the interpretation of "occurrence," as used in the policy, is a question of law. *See U.E. Texas One-Barrington, Ltd. v. General Star Indemnity Co.*, 332 F.3d 274, 277 (5th Cir. 2003). Texas courts use a "cause" analysis to determine whether a set of facts involves one or more "occurrences." *See Ran-Nan, Inc. v. General Accident Ins. Co. of America*, 252 F.3d 738, 740 (5th Cir. 2001), *citing Goose Creek Consolidated Independent School Dist. v. Continental Casualty Co.*, 658 S.W.2d 338, 340 (Tex. App.--Houston [1st Dist.] 1983, no writ). Under this analysis, "the proper focus . . . is on the events that cause the injuries and give rise to the insured's liability, rather than on the number of injurious effects." *U.E. Texas One-Barrington*, 332 F.3d at 277, *quoting Ran-Nan*, 252 F.3d at 740.

Considering the policy language and the facts stipulated by the parties, the court determines as a matter of law that all the damage to the All Metals furnace was "caused," either directly or indirectly, by the May 2, 2007 power outage. The parties agree that the integrity of the furnace was initially damaged during the power outage when the furnace stopped heating and the molten metal inside cooled and solidified, pulling the insulating brick lining away from the shell. (*See* Def. MSJ App. at 2, ¶ 11). When power was restored to the facility on May 4, 2007, All Metals reheated the furnace, but high temperatures escaped through the damaged insulating brick, reaching the shell and damaging additional components of the furnace. (*Id.* at 2-3, ¶¶ 15-19). The damaged brick was replaced and the furnace was reheated a second time on May 22, 2007 to cure the new brick. (*Id.* at 3, ¶¶ 20-24). However, the damaged shell could not handle the high temperatures of the curing process, and the new brick failed. (*See id.* at 3, ¶¶ 24-25). An engineering firm hired by All Metals to investigate the damaged furnace concluded:

> The steel shell suffered from a series of repair events following a power outage with a full metal charge. Necessary repair from the power outage event (furnace heating, re-brick curing, temperature excursions and related pressures) severely damaged the steel shell to the point of its failure and complete uselessness. Had the furnace not gone through the power outage event, the failure would not have occurred.

(Def MSJ App. at 12). In view of these facts, it is clear that all the damage to the furnace is attributable, at least indirectly, to the May 2, 2007 power outage. Thus, under the plain language of the policy, all the loss or damage to the furnace constitutes one "occurrence."

All Metals argues that the power outage was a "distinct and discrete" event that resulted only in damage to the furnace's brick lining when the cooling metal caused the brick to pull away from the shell. (*See* Plf. MSJ Resp. at 8-11). Under its theory of recovery, subsequent events, including reheating the furnace on May 4-8, 2007 and curing the new brick on May 22-24, 2007, resulted in

additional damage to the furnace and various component parts. (*Id.*). However, this argument ignores that an "occurrence," as defined by the policy, includes damages that are *indirectly* attributable to the same cause. (*See* Plf. MSJ Resp., Exh. B at 43). Even if the May 2, 2007 power outage did not directly cause the damage resulting from reheating the furnace on May 4-8, 2007 and May 22-24, 2007, the integrity of the furnace would not have been compromised had it not been for the initial power outage. (*See* Def. MSJ App. at 2, ¶ 11 & *id.* at 12). Nor would the installation or curing of new brick been required. (*See id.*). Thus, the power outage was at least an indirect cause of the loss or damage incurred on May 4-8, 2007 and May 22-24, 2007.

All Metals also cites several cases, including *U.E. Texas One-Barrington*, as authority for the proposition that Texas law focuses on the "immediate cause of damage when determining the number of occurrences." (*See* Plf. MSJ Resp. Br. at 10). However, none of those cases involved a policy that broadly defined an "occurrence" as "loss or damage attributable *directly or indirectly* to one [ ] cause or series of similar causes." (*Id.*, Exh. B at 43) (emphasis added). The insurance policy in *U.E. Texas One-Barrington* defined the term "loss occurrence" much more narrowly as "the total loss by perils insured against arising out of a single event." *U.E. Texas One-Barrington*, 332 F.3d at 277. *Cf. Goose Creek*, 658 S.W.2d at 340 (construing policy with identical definition of "loss occurrence"); *Garza v. Allstate Texas Lloyd's Co.*, 284 Fed. Appx. 110, 114, 2008 WL 341577 at *3 (5th Cir. Feb. 6, 2008) (construing policy that defined "occurrence" as "an accident . . . which results in bodily injury or property damage during the policy period"). Here, all three "losses" claimed by All Metals resulted either directly or indirectly from the May 2, 2007 power outage. Indeed, All Metals concedes as much in its summary judgment response. (*See* Plf. MSJ Resp. Br. at 14) ("[I]t is true that 'but for' the power outage, the second and third loss events would not have occurred.").

Under the plan language of the Services Interruption Coverage Extension endorsement, liability is limited to $500,000 for that single "occurrence."

In a last ditch attempt to avoid the $500,000 policy limit, All Metals argues that the "real issue is whether the damages which resulted from the second and third of the three loss events are excluded." (Plf. MSJ Resp. Br. at 5; *see also* Plf. Reply at 2, 3-4). The Service Interruption Exclusion is fairly narrow, carving out only "losses caused by or resulting from [a service interruption] regardless of any other cause or event . . . that contributes to the loss at the same time or in any other sequence." (Plf. MSJ Resp. Br., Exh. B at 24). According to All Metals, this exclusion does not apply to losses resulting from reheating the furnace on May 4-8, 2007 and curing the new brick on May 22-24, 2007, which were indirectly or remotely caused by the power outage on May 2, 2007. (*See* Plf. Reply at 6, 8-9). However, that argument presupposes that coverage for those discrete loss events otherwise exists under the policy. Regardless of whether the loss events on May 4-8, 2007 and May 22-24, 2007 resulted in additional damage to furnace, the court has determined that *all* damage to the furnace was attributable to the May 2, 2007 power outage, thereby constituting one "occurrence" under the policy. The Service Interruption Exclusion has no relevance under these circumstances.

B.

Having decided the threshold issue of coverage in favor of Liberty Mutual, the court questions whether All Metals can prevail on its claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code. However, neither party has moved for summary judgment as to those claims. Nor can the court grant summary judgment on its own motion without providing the parties with adequate notice and an opportunity to respond as required by Rule 56(c). *See Mannesman Demag*

*Corp. v. M/V Concert Express*, 225 F.3d 587, 595 (5th Cir. 2000). Unless All Metals stipulates to a dismissal with prejudice or the parties otherwise resolve this case, the court will allow Liberty Mutual to file a second motion for summary judgment with respect to all remaining claims.

## CONCLUSION

Liberty Mutual's motion for partial summary judgment [Doc. # 13] is granted, and All Metals' cross-motion for partial summary judgment [Doc. #15] is denied. The parties shall file a joint status report by **August 27, 2010** advising whether they have resolved all remaining issues in this case, or whether it will be necessary for Liberty Mutual to file a second motion for summary judgment. In lieu of a joint status report, the parties may submit a stipulation of dismissal or an agreed judgment for approval and entry.

SO ORDERED.

DATED: July 29, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE